IN THE CIRCUIT COURT OF MARYLAND
FOR ANNE ARUNDEL COUNTY

| | |
|---|---|
| STUDENT "A" <br> c/o Adelphi Law <br> 2306 Wineberry Terrace <br> Baltimore, MD  21209 ) <br><br> *and* <br><br> MATTHEW ZALESKAS <br> c/o Adelphi Law <br> 2306 Wineberry Terrace <br> Baltimore, MD  21209 <br><br><br> *and* <br><br> EVAN ZALESKAS <br> c/o Adelphi Law <br> 2306 Wineberry Terrace <br> Baltimore, MD  21209 <br><br> *Individually, and on behalf of* <br> *similarly-situated persons,* <br> *as Plaintiffs,* <br><br> v. <br><br> GOVERNOR LARRY HOGAN, <br> *in his official capacity as Executive,* <br> 100 State Circle <br> Annapolis, MD <br><br> *and* <br><br> BOARD OF REGENTS OF THE <br>    UNIVERSITY SYSTEM OF <br>    MARYLAND, <br> 3300 Metzerott Road <br> Adelphi, MD 20783 <br><br> *Defendants.* | C-02-CV-20-001155 <br> Civil Action No. _____ <br><br><br><br><br><br><br><br><br><br><br><br><br><br><br> C-02-CV-20-001155 |

1

## CLASS ACTION COMPLAINT

Plaintiffs Student "A", Matthew Zaleskas, and Evan Zaleskas, by and through undersigned counsel, and on their own behalf and on behalf of those similarly situation, for their Class Action Complaint against the Board of Regents of the University System of Maryland (the "University Board") and the Honorable Governor Larry Hogan, in his official capacity as the executive of the State of Maryland ("Gov. Hogan") (hereinafter, collectively, "Defendants"), seeking damages and declaratory and injunctive relief, hereby allege as follows:

### NATURE OF THE CASE

1.      This action is a class-action suit for damages and equitable relief under the common laws of the State of Maryland and Section § 12-201, *et seq.*, of the Maryland Code, State Government Title, seeking legal remedy and equitable relief for the Defendants' breaches and takings thereof, related to the Defendants' refusal to fully refund and rebate tuition, costs, and fees, for students affected by the Defendants' decision to switch students from in-person to online classes, close access to facilities and evict students from residences, under orders related to the COVID19 pandemic.

2.      Plaintiffs acknowledge at the outset that the Defendants acted in the best interests of the safety of Plaintiffs and the Class, albeit in an under-prepared and haphazard manner, by switching students to online education and closing access to facilities and the residences maintained by Defendants; however, given that Defendants are unfairly retaining benefits of the bargains it made with the Plaintiffs and the Class, and likely qualifies for relief under the federal Higher Education Emergency Relief Fund under Section 18004(a)(1) and 18004(c) of the Coronavirus Aid, Relief, and Economic Security (CARES) Act for any unreimbursed impact of the pandemic, the shift of the economic burden of the breach of contract onto Plaintiffs and the Class is unfair, unjust,

and a breach of the public trust that will affect the Plaintiffs and Class for years, through unjustified debt, reduced value of their collegiate experience, and in causing them to distrust the very institutions they were supposed to be nurtured by.

## **PARTIES**

3.      Plaintiff Student "A" is a resident of the State of Maryland and a full-time student of University of Maryland Baltimore County.[1]

4.      Plaintiff Matthew Zaleskas is a resident of the State of Maryland and is the parent of Evan Zaleskas, and as such has in part underwritten Evan Zaleskas's education at Towson University.

5.      Plaintiff Evan Zaleskas is a resident of the State of Maryland and a full-time student at Towson University.

6.      Defendant Board of Regents of the University System of Maryland (abbreviated hereinafter as "USM") is the managerial board of the State of Maryland's university system, of which Bowie State University, Coppin State University, Frostburg State University, Salisbury University, Towson University ("TU"), University of Baltimore, University of Maryland, Baltimore, University of Maryland, Baltimore County ("UMBC"), University of Maryland, College Park, University of Maryland Eastern Shore, The Universities at Shady Grove, University System of Maryland at Hagerstown, University System of Maryland in Southern Maryland, and University of Maryland Center for Environmental Science are part (referred to hereinafter, singly or collectively, as "USM School" or USM Schools"), and as the managerial board is

---

[1]      Plaintiff will file a Motion for Protective Order seeking to allow them to proceed anonymously, or at least with some restrictions on disclosure of personal information, if no agreement can be reached with Defendants on this issue.  The Plaintiff will be referred to by the masculine pronoun hereinafter, without any admission as to gender or identification.

authorized to accept claims against USM under the Education Title of the Maryland Code.

      **7.**     Defendant the Hon. Larry Hogan is the executive of the State of Maryland and is sued here in his official capacity.

<u>**JURISDICTION AND VENUE**</u>

      8.     Plaintiffs bring this action against Defendants in Circuit Court of Maryland pursuant to Maryland Code Annotated, Courts and Judicial Proceedings, "Trial Courts of General Jurisdiction," § 1-501 (2006), which grants "full common-law and equity powers and jurisdiction in all civil and criminal cases within its county, and all the additional powers and jurisdiction conferred by the Constitution and by law," to this Court.

      9.     Actions for declaratory judgment are authorized in this Court pursuant to Md. Code Ann., "Declaratory Judgment," (2006) ("DJA").

      10.     The Defendants waived sovereign immunity under Maryland Code, State Government, Title 12, "Immunity and Liability," Section 12-201 *et seq*., this suit being brought in contact against officers and units of the State within one year the claim arose.

      11.     On information and belief, this action is properly brought in Circuit Court because the amount in controversy exceeds $5,000.

      **12.**     Venue is proper in this Court because, pursuant to Maryland Code Annotated, Courts and Judicial Proceedings, "Trial Courts of General Jurisdiction," § 6-201 and on information and belief, the Defendants carry on "on a regular business" in the Circuit in which this case is filed.

## **GENERAL ALLEGATIONS**

13.     The University System of Maryland is the governing entity for the USM Schools and is an independent agency of the State of Maryland.

14.     The University Board manages the USM Schools by administrating them, appointing their presidents and by creating academic and administrative policies across the whole University System.

15.     On information and belief, the policies complained of herein are consistent across the USM Schools and were created or approved by the University Board.

16.     Plaintiff A is a student at University of Maryland, Baltimore County (the "School").

17.     Plaintiff A decided to attend UMBC in part because of it's facilities for in-person education, opportunity for one-on-one in-person interaction with professors, access to extra-curricular activities, cultural enrichment, networking opportunities, and the like.  UMBC's website, like those of all the USM Schools, touts the benefits of in-person interaction with professors and other students.  For example, UMBC's website quotes a student as follows: "UMBC is a great place to go to school, but you have to make sure you make use of it. Bug the professors' office hours, interact with peers and make friends and you will get a lot out of your time here." https://coeit.umbc.edu/nathan-niewoehner/ (last accessed May 1, 2020, at 10:39AM).

18.     TU's website contains virtually the same content: for example, one page encourages students to build a rapport with their professors by, *inter alia*, attending office hours and to "not use email as a substitute for face-to-face conversation. Most professors complain that students fail to take advantage of office hours and speak with them in person. Many issues are often better handled in person than by email."

https://www.towson.edu/provost/students/professors.html (last accessed May 3rd, 2020, 9:51AM).

19.     UMBC's website, like those of all the USM Schools, also boasts about opportunities to meet faculty in campus informational events, an important step in undecided young students determining what major they may wish to pursue, or simply for networking among decided students. *See, e.g.,* https://my3.my.umbc.edu/groups/educ/events/72856 (meet and greet with the Education faculty); https://my3.my.umbc.edu/groups/socy/posts/86160 (same, Sociology, Anthropology, & Public Health departments); *see also* https://www.rhsmith.umd.edu/events/admitted-student-weekend-1 (similar content for University of Maryland) (last accessed May 3, 2002 10:03AM).

20.     The USM Schools also actively advertises the benefits of their campuses and student life there.  UMBC's website states, in part:

> College is not only a time to master an academic subject, it is also the time to make new friends and explore new interests. At UMBC, there is an active club culture, with more than 200 from which to choose. Here, you can talk politics, volunteer, explore world cultures, play pick-up games of Frisbee, join an a cappella group, plant a community garden – or you can even start your own club! And at UMBC you can be certain that, whatever your interests, you will find classmates with which to explore them.

https://undergraduate.umbc.edu/community/student-organizations.php (last accessed May 1, 2020, at 11:04AM); *see also* "Student Life - It's your time at Towson University. Make the most of every minute — in and out of the classroom," https://www.towson.edu/studentlife/ (last accessed May 3, 2020 9:46AM); https://www.admissions.umd.edu/explore/campus-life (similar content) (last accessed May 3, 2002 9:58AM).

21.     And further:

> UMBC is home to two art galleries (the Center for Art, Design and Visual Culture and the Albin O. Kuhn Library Gallery) and two professional dance companies (the Baltimore Dance Project and Doug Hamby Dance). The Performing Arts and Humanities Building (PAHB) provides state-of-the-art facilities for the UMBC Departments of Theatre, Music, and Dance, as well as the Linehan Concert Hall. In the PAHB you will find the 250-seat Proscenium Theatre and the 125-seat Black Box Theatre. Guest artists and faculty are presented in dozens of music, theatre, and dance performances each year. The Humanities Forum and Social Sciences Forum lecture series bring eminent scholars to UMBC throughout the year.

https://undergraduate.umbc.edu/quicklinks/fast-facts.php (last accessed May 1, 2020, at

10:58AM); *see also* https://www.towson.edu/campus/artsculture/ (similar content) (last

accessed May 3, 2002, 10:06AM).

22.     And further:

> Retrievers play just as hard as they study. Whether you're interested in cheering on one UMBC's Division I teams, participating in one of our numerous club sports teams, or simply taking a walk-in yoga class with friends, you'll find plenty to do on campus. Plus, with our new Event Center currently under construction, the spirit of fitness and fun is a major piece of Retriever life at UMBC.

> The RAC (Retriever Activity Center) is equipped with state-of-the-art exercise and fitness machines (Stair Steppers, Stair Masters, Treadmills, Rowers, Stationary Cycles, free weights, selectorized "Body Master" equipment, etc.). The Center also includes indoor and outdoor swimming pools, indoor track, volleyball and basketball courts, a fitness studio (group fitness classes) and a host of other athletic services. RAC hours and General Facility Regulations are posted in the Center and listed on the web at recreation.umbc.edu.

https://undergraduate.umbc.edu/community/athletics.php (last accessed May 1, 2020, at

11:02AM); *see also* https://www.towson.edu/studentlife/activities/recreation/ (similar

content) (last accessed May 3, 2020 10:06AM);

https://www.admissions.umd.edu/explore/campus-life (similar content) (last accessed

May 3, 2020, 10:11AM).

23.     And further:

> Living on campus gives you a chance to be part of an
> energetic campus community. You have space to study, relax and
> explore. First-year students live in one of five residence halls while
> transfer and upperclass students may apply to live in the residence
> halls, suites or apartments. Continuous occupancy housing is
> available to students who need to stay on campus during university
> break periods.

https://undergraduate.umbc.edu/community/housing.php (last accessed May

1st, 2020, at 11:07AM); https://www.admissions.umd.edu/explore/campus-life

(similar content) (last accessed May 3, 2020, 10:11AM).

24.     Thus, the Defendants advertise on each of the USM Schools' websites that

part of the educational experience at the USM Schools includes, *inter alia*, access to

interaction with faculty of various departments; students of their programs and as well as

other programs, as well as students of their classes and others; access to facilities such as

computer labs, study areas, libraries, laboratories, exercise facilities and the like; student

governance and student unions; intramural events, clubs, formal and informal groups;

offerings of arts, music, and cultural programs; and in general social development and

personal and professional networking opportunities.

25.     Although UMBC and TU offer online education, Plaintiffs Student A and

E. Zaleskas each elected not to attend their respective USM Schools online because it

would have meant largely forgoing these highly valuable additional benefits of in-person

attendance at a USM School.

26.     As part of their attendance at a UMS School, Plaintiffs and Class

Members are required by pay tuition in full, either in full or under a payment plan, prior

to each semester.

27.     Plaintiff A's spring semester at UMBC began on or about January 26, 2020 with a move-in to the residences at UMBC, and classes beginning the next day (the "Spring Semester").

28.     Plaintiff A paid tuition for the Spring Semester in or about December 2019 and January 2020, using installment payments and financial aid, in the amount of $4,352.00 for in-person attendance at UMBC (the Plaintiff's "In-Person Tuition"), at the Maryland resident rate, plus $3,925 for housing, $2,383.00 for a meal plan, and another $1,662.00 in mandatory fees, including a "University Commons Fee," "Transportation Fee," "Technology Fee," "Auxiliary Facilities Fee," and "Student Activities Fee," for a total tuition, costs, and fees charged of approximately $12,322.00 for the Spring Semester.

29.     On information and belief, Plaintiff A paid approximately the same In-Person Tuition as the majority of the Tuition Class Members, similar Mandatory Fees as the Mandatory Fees Class, and the similar housing and meal plan charges for the applicable Resident Class Members.

30.     Plaintiff Evan Zaleskas's  Spring Semester at TU began on or about January 26, 2020 with a move-in to the residences at TU, and classes beginning the next day.

31.     Plaintiff Evan Zaleskas, with assistance from Plaintiff Matthew Zaleskas, paid tuition for the Spring Semester in or about December 2019 and January 2020, using installment payments and financial aid, in the amount of $3,481.00 for in-person attendance at TU (the Plaintiff's "In-Person Tuition"), at the Maryland resident rate, plus $3,723.00 for housing, $2,700.00 for a meal plan, and another $1,668.00 in mandatory fees, including a "Technology Fee," an "Athletics Fee," "Auxiliary Facilities Fee," and

"Student Activities Fee," for a total tuition, costs, and fees charged of approximately $12,322.00 for the Spring Semester.

32.     On information and belief, Plaintiff Evan Zaleskas and his father Matthew Zaleskas paid approximately the same In-Person Tuition as the majority of the Tuition Class Members, similar Mandatory Fees as the Mandatory Fees Class, and the similar housing and meal plan charges for the applicable Resident Class Members.

33.     On March 12, 2020, the Defendants ordered classes be suspended until further notice.

34.     Classes were then suspended for two weeks, and resumed online exclusively for the remainder of the Spring Semester on or about March 23, 2020 (e.g., after USM Schools' already scheduled spring break).

35.     However, in some cases, USM Schools actually canceled scheduled days of classes and did not make them up.

36.     On or about March 12, 2020, Plaintiffs and Class Members were told that USM campuses would be closing.

37.     As of that date, and to the present, Plaintiffs and Class Members did not and do not have access to USM's physical facilities, including the aforementioned classrooms, study halls, libraries, computer  and other labs, athletic facilities, residence halls, cafeterias, faculty and staff offices, on-campus health facilities, and the like.

38.     In April of 2020, the Defendants reduced the Housing and Meal Plan charges to Plaintiff Student A. by reversing amounts of $2,184.72 and $1,291.42 to Plaintiff's account, respectively.

39.     In April of 2002, the Defendants reversed some charges on the Zaleskas's account, refunding some $3,951.49 in relation to the Mandatory Fees, housing, and meal plans.

40.     On information and belief, similar reductions in charges were made to the students that make up the Resident Class Members.

41.     As noted below, however, these reductions do not fully compensate Plaintiffs for their lost value in the Housing and Meal Plans, nor do the reductions, on information and belief, fully compensate the Resident Student Class Members.

42.     Also in April of 2020, the Defendants credited Plaintiff Student A's account with two "E-Refunds" in the amounts of $810.15 and $787.78.  What those refunds were for specifically was not defined.

43.     On information and belief, Class Members also received at least one of these "E-Refunds," also without explanation.

44.     However, as noted below, these E-Refunds do not compensate Plaintiff A fully for the Defendants' breaches of contract and takings.

45.     On information and belief, as also noted below, these E-Refunds do not compensate Class Members fully for the Defendants' breaches of contract and takings.

46.     Furthermore, the Defendants have not compensated Plaintiffs and the Class Members for the decreased value of their tuition, when the Defendants converted the Plaintiffs' and the Class's rich in-person educational experience to something worth less than what the students bargained and paid for, for the missed days of classes, for interest accrued or paid on loan amounts that are not for tuition actually received, and the like.

## CLASS ACTION ALLEGATIONS

47.     Pursuant to Maryland Rule 2-231, Plaintiffs bring this action on behalf of themselves and similarly-situated persons defined as:

- The Tuition Class: All persons who paid tuition for in-person classes for themselves or on behalf of a student at a USM School for the Spring Semester of 2020, but who had their in-person on-campus educational experience converted to online education on or around March 12, 2020, for the remainder of the Spring Semester.

- The Mandatory Fees Class:  All persons who paid USM School mandatory fees for in-persons education for themselves or on behalf of a student at School for the Spring Semester of 2020, but who had their in-person on-campus educational experience converted to online education on or around March 12, 2020, for the remainder of the Spring Semester, and who have not received full refunds for the loss in value of those Fees from Defendants.

- The Resident Class: All persons who paid for housing and or meal plans for themselves or on behalf of a student at a USM School for the Spring Semester of 2020, but who had their housing and meal plans terminated on or around March 12, 2020, for the remainder of the Spring Semester, and who have not received full refunds for what housing and meal plans they were not able to use.

48.     Excluded from the Class are the officers, directors, and employees of Defendant, the legal representatives, heirs, successors, and assigns of Defendant, and all judges who may ever adjudicate this case.

49.     This action is brought as a class action and may properly be so maintained pursuant to the provisions of the Maryland Rules.  Plaintiffs reserve the right to modify the Class definition and the class period based on the results of discovery and or as otherwise appropriate.

50.     Maryland Rule 2-231, "Class actions," requires that "[o]ne or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class."

51.     This Class Action satisfies the "numerosity" requirement of Rule 2-231, in that the potential members of the Class are so numerous that their individual joinder is impracticable.  The precise numbers and addresses of members of the Class are unknown to the Plaintiffs, but USM Schools are reported to have some 172,000 students enrolled, who are all likely Class Members, either as members of the Tuition Class, the Fees Class, and the Resident Class.  The precise number of persons in the Class and their identities and addresses may be ascertained from Defendants' records.

52.     The present suit satisfies the "commonality of interest" requirement in the questions of law and fact involved affecting the members of the Class.  These common legal and factual questions presented by this Class Action include:

- Whether the factual allegations are true.

- Whether online learning removed from campus educational, social, and professional interactions is worth the same as in-person, in-classroom education

in a campus environment designed to cater to students' educational, social, and professional needs;

- Whether the Defendants breached their express, implied, or quasi-contractual agreements with Plaintiffs and the Class through acts or omissions, including, but not limited to, by failing to provide in-person, in-classroom education after March 12, 2020, and by not compensating the Tuition Class for the difference in value between said in-person, in-classroom education and the online classes that have been offered;

- Whether or not those same acts and omissions constitute a takings under the Constitutions of the United States of America and the State of Maryland;

- Whether the Defendants breached their express, implied, or quasi-contractual agreements with Plaintiffs and the Mandatory Fees Class through acts or omissions, including, but not limited to, by failing to provide access to facilities that the Mandatory Fees were all or in part intended to cover after March 12, 2020, and by not compensating the Mandatory Fees Class in whole or in part for the actual value received by Plaintiffs and the Mandatory Fees Class for those Mandatory Fees;

- Whether or not those same acts and omissions constitute a takings under the Constitutions of the United States of America and the State of Maryland;

- Whether the Defendants breached their express, implied, or quasi-contractual agreements with the Plaintiffs and the Resident Class through acts or omissions, including, but not limited to, by failing to provide on-campus housing and meals after approximately March 12, 2020, and by not compensating the Resident Class

for the actual difference in value of what was paid for the by Class and what monies were refunded by Defendants;

- Whether or not those same acts and omissions constitute a takings under the Constitutions of the United States of America and the State of Maryland;

- Whether or not class certification is appropriate in this case;

- Whether Class Members are entitled to declaratory, equitable, and or injunctive relief; and

- What compensatory damages or other relief are appropriate to award for Plaintiffs, the Tuition Class, and the Resident Class.

53.     Plaintiffs' claims are "typical" of the claims of the members of the Class because Plaintiffs represent students and a parent of USM Schools during the relevant time, and is therefore fully affected by all events described herein.  On information and belief, USM policies in relation to the matters complained of herein are consistent across all of the USM Schools, because of the acts and or omissions of the Defendants. Plaintiffs and all members of the Class have therefore similarly suffered harm arising from Defendants' acts and omissions described herein.

54.     Plaintiffs are adequate representatives of the Class because their interests do not conflict with the interests of the members of the Class they seek to represent. Plaintiffs intend to prosecute this action vigorously, in the public interest, with the aim of protecting rights of students from externalization of foreseen and unforeseen burdens onto them from educational institutions, who are the proper parties to bear such burden. Furthermore, Plaintiffs have retained committed and experienced counsel to prosecute

their claims vigorously.  Plaintiffs therefore will fairly and adequately protect the interests of the members of the Class.

55.     This suit may therefore properly be maintained as a class action pursuant to Maryland Rule 2-231, as all of the required factors of numerosity, common questions of fact and law, typicality and adequacy are present.  Moreover, the conduct by Defendants upon which this suit is based has generally applicable impacts on the Plaintiffs and the Class as a whole, thereby making declaratory and or injunctive relief proper.

**COUNT I**
**Breach(es) of Contract**
**(On Plaintiffs' own and on behalf of the Tuition Class)**

56.     Plaintiffs repeat and incorporate herein by reference the allegations in the preceding paragraphs of this Complaint, as if set forth fully herein.

57.     The Plaintiffs and the Defendants had an express or implied contract that called for the Plaintiffs to fully pay demanded In-Person Tuition in exchange for Defendants' provision of in-person, in-classroom education in USM School campus environments designed to cater to Plaintiffs' and the Class's educational, social, and professional needs.

58.     The Defendants breached that express or implied contract by acts or omissions, including, but not limited to, by failing to provide said in-person, in-classroom education, by converting Plaintiffs' and the Class's education to one that was solely online without access to USM Schools' campus and facilities, by refusing to refund the difference in value between the in-person, in-classroom education and the tendered

16

online education, and by otherwise failing to provide Plaintiffs and the Class with the benefit of their paid-for bargain.

59.     The Plaintiffs and members of the Tuition Class have suffered damage as a direct and proximate result of the Defendants' breaches, including by being deprived of the benefit of the in-person, in-classroom education in a campus environment designed to cater to Plaintiffs' and the Class's educational, social, and professional needs, by incurring interest on loans for tuition that was paid for but not delivered, and by loss of value of the In-Person Tuition that the Plaintiffs and Class paid for.

**60.**     Plaintiffs and the Tuition Class Members received approximately forty-five (45) days of in-person, in-classroom education at their USM Schools for the Spring Semester before classes were moved online; Plaintiffs and Class Members demand that they be awarded as damages the entire remainder of their tuition, rebated in an amount of no less than fifty percent (50%), for the remainder of the Spring Semester, on a pro-rata basis, or an amount to be proven at trial.

**COUNT II**
**Breach(es) of Contract**
**(On Plaintiffs' own and on behalf of the Mandatory Fees Class)**

61.     Plaintiffs repeat and incorporate herein by reference the allegations in the preceding paragraphs of this Complaint, as if set forth fully herein.

62.     The Plaintiffs and the Defendants had an express or implied contract that called for the Plaintiffs to fully pay Mandatory Fees in exchange for Defendants' provision of various aspects of on-campus education in USM School campuses, which are designed to cater to Plaintiffs' and the Class's educational, social, and professional needs.

63.     The Defendants breached that express or implied contract by acts or omissions, including, but not limited to, by failing to provide that on-campus educational experience, by refusing to refund all or part of the Mandatory Fees, despite the fact that the access to the facilities or services were no longer offered, and by otherwise failing to provide Plaintiffs and the Class with the benefit of their paid-for bargain.

64.     The Plaintiffs and members of the Mandatory Fees Class have suffered damage as a direct and proximate result of the Defendants' breaches, by not having accessed to facilities and services that they paid for, by incurring interest on loans for tuition that was paid for but not delivered, and in general by loss of value of the Mandatory Fees that the Plaintiffs and Class paid for.

**65.**     Plaintiffs and the Mandatory Fees Class Members received approximately forty-five (45) days of in-person, in-classroom education at their USM Schools for the Spring Semester before campuses were closed; Plaintiffs and Class Members demand that they be awarded as damages the remainder of their Mandatory Fees rebated in full for the remainder of the Spring Semester, on a pro-rata basis, less any rebates already given, or an amount to be proven at trial.

### COUNT III
### Breach(es) of Contract
### (On Plaintiffs' own and on behalf of the Resident Class)

66.     Plaintiffs repeat and incorporate herein by reference the allegations in the preceding paragraphs of this Complaint, as if set forth fully herein.

67.     The Plaintiffs and the Defendants had an express or implied contract that called for the Plaintiffs to fully pay Resident Fees in exchange for Defendants' provision of housing and or meal plans related to on-campus education in USM School campuses,

which are designed to cater to Plaintiffs' and the Class's educational, social, and professional needs.

68.     The Defendants breached that express or implied contract by acts or omissions, including, but not limited to, by failing to provide that housing and meal plans, by refusing to refund all or part of the Resident Fees, despite the fact that the housing and meal plans were no longer offered, and by otherwise failing to provide Plaintiffs and the Class with the benefit of their paid-for bargain.

69.     The Plaintiffs and members of the Mandatory Fees Class have suffered damage as a direct and proximate result of the Defendants' breaches, by not having the housing and meal plans that they paid for, by incurring interest on loans for tuition that was paid for but not delivered, and in general by loss of value of the Resident Fees that the Plaintiffs and Class paid for.

**70.**     Plaintiffs and the Mandatory Fees Class Members received approximately forty-five (45) days of housing and meal plans at their USM Schools for the Spring Semester before campuses were closed; Plaintiffs and Class Members demand as damages the remainder of their Resident Fees, rebated in full, for the remainder of the Spring Semester, on a pro-rata basis, less any rebates already given, or an amount to be proven at trial.

### COUNT IV
### Quasi-Contract Claim – Unjust Enrichment
### (On Plaintiffs' own and on behalf of the Tuition Class)

71.     Plaintiffs repeat and incorporate herein by reference the allegations in the preceding paragraphs of this Complaint, as if set forth fully herein.

72.     The Plaintiffs and the Tuition Class paid tuition for the Spring Semester for in-person education at USM Schools.

73.     On or about March 12, 2020, the USM Schools converted all remaining in-person, in-classroom education to online learning for the remainder of the Spring Semester.

74.     Thus, the Plaintiffs and the Tuition Class only received some forty-five (45) days of what they paid for, *e.g.*, in-person in-classroom education with direct contact with their professors and fellow students.

75.     The in-person in-classroom education is more valuable and rewarding than online only learning, in addition to not being what the Plaintiffs and the Tuition Class wanted from their USM experience.

76.     The Defendants expressly or constructively know and appreciate this, as evidenced by their touting of the benefits of in-person education across the websites of the USM Schools, as noted above.

77.     It is therefore inequitable for Defendants to retain the full value of the remaining In-Person Tuition.

**78.**     Plaintiffs and Tuition Class Members therefore demand that they be awarded the remainder of their tuition, rebated in an amount of no less than fifty percent (50%), for the remainder of the Spring Semester, on a pro-rata basis, or an amount to be proven at trial.

**COUNT V**
**Quasi-Contract Claim – Unjust Enrichment**
**(On Plaintiffs' own and on behalf of the Mandatory Fees Class)**

79.     Plaintiffs repeat and incorporate herein by reference the allegations in the preceding paragraphs of this Complaint, as if set forth fully herein.

80.     The Plaintiffs and the Mandatory Fees Class paid mandatory fees for the Spring Semester for in-person education at USM Schools.

81.     On or about March 12, 2020, the USM Schools closed all campuses, eliminating access to the facilities and services provided under the Mandatory Fees.

82.     Thus, the Plaintiffs and the Mandatory Fees Class only received some forty-five (45) days of what they paid for, e.g., the items covered by the Mandatory Fees – access to libraries, exercise facilities, labs, and the like.

83.     That access has value, as demonstrated by the fact that USM charges for it.

84.     The Defendants expressly or constructively know and appreciate this, as evidenced by their charging the Plaintiffs and the Mandatory Fees Class these fees.

85.     It is therefore inequitable for Defendants to retain the full value of the remaining Mandatory Fees.

**86.**     Plaintiffs and Mandatory Fees Class Members therefore demand that they be awarded the entire remainder of their Spring Semester Mandatory Fees, less any rebates given, on a pro-rata basis, or an amount to be proven at trial.

## COUNT VI
### Quasi-Contract Claim – Unjust Enrichment
### (On Plaintiffs' own and on behalf of the Resident Class)

87.     Plaintiffs repeat and incorporate herein by reference the allegations in the preceding paragraphs of this Complaint, as if set forth fully herein.

88.     The Plaintiffs and the Resident Class paid for housing and meal plans for the Spring Semester as part of their payments for in-person education at USM Schools.

89.     On or about March 12, 2020, the USM Schools closed all campuses, eliminating the housing and meal plans provided to Plaintiffs and the Resident Class.

90.     Thus, the Plaintiffs and the Resident Class only received some forty-five (45) days of what they paid for.

91.     Those housing and meal plans have value, as demonstrated by the fact that USM charges for it.

92.     The Defendants expressly or constructively know and appreciate this, as evidenced by their charging the Plaintiffs and the Resident Class for those services.

93.     It is therefore inequitable for Defendants to retain the full value of the remaining Resident Fees.

**94.**     Plaintiffs and Resident Class Members therefore demand that they be awarded the entire remainder of their Spring Semester Resident Fees, less any rebates given, on a pro-rata basis, or an amount to be proven at trial.

**COUNT VII**
**Unconstitutional Takings**
**(On Plaintiffs' own and on behalf of the Tuition Class)**

95.     Plaintiffs repeat and incorporate herein by reference the allegations in the preceding paragraphs of this Complaint, as if set forth fully herein.

96.     Under the Constitution of the United States of America, Amendments V and XIV, the Maryland Constitution, Article III, Section 40, as well as the common-law of the State of Maryland, the Defendants may not take vested tangible or intangible property rights of citizens without just or fair compensation.

97.     The Plaintiffs and the Tuition Class paid tuition for the Spring Semester for in-person education at USM Schools, which gave them a property right in that same education.

98.     On or about March 12, 2020, the USM Schools converted all remaining in-person, in-classroom education to online learning for the remainder of the Spring Semester.

99.     Thus, the Plaintiffs and the Tuition Class only received some forty-five (45) days of what they paid for, *e.g.*, in-person in-classroom education with direct contact with their professors and fellow students.

100.    The in-person in-classroom education is more valuable and rewarding than online only learning, in addition to not being what the Plaintiffs and the Tuition Class wanted from their USM experience.

101.    The Defendants expressly or constructively know and appreciate this, as evidenced by their touting of the benefits of in-person education across the websites of the USM Schools, as noted above.

102.    The conversion of the Plaintiffs' and the Tuition Class's education from in-person, in-classroom education into exclusively online education is therefore an unconstitutional taking of the Plaintiffs' and the Tuition Class's property, for which they have received no compensation.

**103.**    Plaintiffs and Tuition Class Members therefore demand that they be awarded the remainder of their tuition, rebated in an amount of no less than fifty percent (50%), for the remainder of the Spring Semester, on a pro-rata basis, or an amount to be proven at trial, as just and fair compensation for this unconstitutional taking.

**COUNT IX**
**Unconstitutional Takings**
**(On Plaintiffs' own and on behalf of the Resident Class)**

104.     Plaintiffs repeat and incorporate herein by reference the allegations in the preceding paragraphs of this Complaint, as if set forth fully herein.

105.     Under the Constitution of the United States of America, Amendments V and XIV, the Maryland Constitution, Article III, Section 40, as well as the common-law of the State of Maryland, the Defendants may not take vested tangible or intangible property rights of citizens without just or fair compensation.

106.     The Plaintiffs and the Mandatory Fees Class paid mandatory fees for the Spring Semester for access to facilities at USM Schools, which gave them a property right in the same.

107.     On or about March 12, 2020, the USM Schools closed all campuses, eliminating access to the facilities and services provided under the Mandatory Fees.

108.     Thus, the Plaintiffs and the Mandatory Fees Class only received some forty-five (45) days of what they paid for, *e.g.*, the items covered by the Mandatory Fees – access to libraries, exercise facilities, labs, and the like.

109.     That access has value, as demonstrated by the fact that USM charges for it.

110.     The Defendants expressly or constructively know and appreciate this, as evidenced by their charging the Plaintiffs and the Mandatory Fees Class these fees.

111.     While some Mandatory Fees have been rebated, the Plaintiffs and the Mandatory Fees Class have not been fully compensated for this unconstitutional taking by the Defendants.

112.    Plaintiffs and Mandatory Fees Class Members therefore demand that they be awarded the entire remainder of their Spring Semester Mandatory Fees, less any rebates given, on a pro-rata basis, or an amount to be proven at trial, as just and fair compensation for these unconstitutional takings.

**COUNT VIII**
**Unconstitutional Takings**
**(On Plaintiffs' own and on behalf of the Fees Class)**

113.    Plaintiffs repeat and incorporate herein by reference the allegations in the preceding paragraphs of this Complaint, as if set forth fully herein.

114.    Under the Constitution of the United States of America, Amendments V and XIV, the Maryland Constitution, Article III, Section 40, as well as the common-law of the State of Maryland, the Defendants may not take vested tangible or intangible property rights of citizens without just or fair compensation.

115.    The Plaintiffs and the Resident Class paid for housing and meal plans for the Spring Semester at USM Schools, which gave them a property right in those same housing and meal plans.

116.    On or about March 12, 2020, the USM Schools closed all campuses, eliminating the housing and meal plans provided to Plaintiffs and the Resident Class.

117.    Thus, the Plaintiffs and the Resident Class only received some forty-five (45) days of what they paid for.

118.    Those housing and meal plans have value, as demonstrated by the fact that USM charges for it.

119.    While some Resident Fees have been rebated, the Plaintiffs and the

Resident Class have not been fully compensated for this unconstitutional taking by the

Defendants.

**120.**    Plaintiffs and Resident Class therefore demand that they be awarded the

entire remainder of their Spring Semester Resident Fees, less any rebates given, on a pro-

rata basis, or an amount to be proven at trial, as just and fair compensation for these

unconstitutional takings.

**COUNT X**
**Declaratory Relief**

121.    Plaintiffs repeat and incorporate herein by reference the allegations in the

preceding paragraphs of this Complaint, as if set forth fully herein.

122.    There exists a justiciable controversy between the Plaintiffs, the Class, and

the Defendants, and litigation has become necessary to address these controversies and

prevent further harm to Plaintiffs and the Class.

123.    The Plaintiffs seek declaratory relief to relieve uncertainty as to their legal

rights in relation to their status as students at USM Schools, and a declaration by this

Court will likely help to terminate the uncertainty and or the need for further

proceedings.

124.    Plaintiffs request that this Court, pursuant to the DJA, Maryland

Annotated Code, Courts And Judicial Proceedings, Courts Of General Jurisdiction,

Subtitle 4 - Declaratory Judgment, §§ 3-401, 3-406, and or 3-409, and 3-410, declare:

- That online learning removed from campus educational, social, and professional

    interactions is not worth the same as in-person, in-classroom education in a

campus environment designed to cater to students' educational, social, and professional needs;

- That the Defendants breached their express, implied, or quasi-contractual agreements with Plaintiffs and the Class through acts or omissions, including, but not limited to, by failing to provide in-person, in-classroom education after March 12, 2020, and by not compensating the Tuition Class for the difference in value between said in-person, in-classroom education and the online classes that have been offered;

- That these same acts and omissions constitute a takings under the Constitutions of the United States of America and the State of Maryland;

- That the Defendants breached their express, implied, or quasi-contractual agreements with Plaintiffs and the Mandatory Fees Class through acts or omissions, including, but not limited to, by failing to provide access to facilities that the Mandatory Fees were all or in part intended to cover after March 12, 2020, and by not compensating the Mandatory Fees Class in whole or in part for the actual value received by Plaintiffs and the Mandatory Fees Class for those Mandatory Fees;

- That those same acts and omissions constitute a takings under the Constitutions of the United States of America and the State of Maryland;

- That the Defendants breached their express, implied, or quasi-contractual agreements with the Plaintiffs and the Resident Class through acts or omissions, including, but not limited to, by failing to provide on-campus housing and meals after approximately March 12, 2020, and by not compensating the Resident Class

for the actual difference in value of what was paid for the by Class and what monies were refunded by Defendants;

- That those same acts and omissions constitute a takings under the Constitutions of the United States of America and the State of Maryland;

- That class certification is appropriate in this case;

- And that relief should be rewarded to the Plaintiffs and the Class, including compensatory damages and costs under Section 3-410 of the DJA.

## COUNT XI
### Injunctive Relief

125.    Plaintiffs repeat and incorporate herein by reference the allegations in the preceding paragraphs of this Complaint, as if set forth fully herein.

126.    The Plaintiffs and the Class have contractual, quasi-contractual, and constitutional rights in their paid-for tuition, fees, and costs at the USM Schools.

127.    The rights of the Plaintiffs and the Class Members in obtaining refunds, rebates, or discounts outweigh those of the Defendants in wrongfully holding the Plaintiffs' and Class's monies.

128.    If the acts Plaintiffs seek to enjoin happen, Plaintiffs and the Class Members will suffer irreparable harm by being forced out of school, having permanent records that they cannot easily erase, and by otherwise suffering injuries such as loss of college-aged development for which there is no clear and easily-accessible legal remedy.

129.    The public interest is severed in upholding contractual rights, in preventing or requiring compensation for governmental takings, and in general in supporting students as they develop into fully-formed and educated citizens.

130.    Plaintiffs therefore request that this Court permanently enjoin the Defendants from the following conduct:

- Retaliation of any kind against the Plaintiffs, any future named Plaintiffs, or any members of the Class for participating in this lawsuit, as related to their enrollment at any of the USM Schools or otherwise;

- From charging Plaintiffs and any Member of the Tuition Class full In-Person Tuition for the Summer of 2020 and onwards for so long as the USM Schools are not in fact offering face-to-face, in-person classroom education;

- From charging Plaintiffs and any Member of the Mandatory Fees class mandatory fees for items that the Plaintiffs and the Mandatory Fees Class members do not in fact have access to for the Summer of 2020 and onwards for so long as the USM Schools are not in fact offering on-campus education.

## JURY DEMAND

Plaintiffs hereby request a jury trial for all issues triable by jury including, but not limited to, those issues and claims set forth in any amended complaint or consolidated action.

## REQUEST FOR RELIEF

WHEREFORE, the Plaintiffs respectfully requests that the Court:

A.    Certify  the proposed Class and/or Subclass, appoint Plaintiffs and their counsel to represent the proposed Class, and require notice to the proposed Class(es) to be paid by Defendants.

B.    Award monetary damages, restitution, or disgorgement to Plaintiff Student A in an amount no less than $2,171.47, Plaintiffs Evan and Matt

Zaleskas in an amount no less than $2,135.36, and to the Class to the maximum extent permitted by law and as identified under the quantum theories herein;

C.      Award to Plaintiff Student A reasonable compensation for serving as a class representative;

D.      Award to Plaintiffs Evan and Matt Zaleskas reasonable compensation for serving as a named class representatives;

E.      Enter declaratory relief as requested in Count X, and award costs thereof;

F.      Permanently enjoin Defendants from the conduct outlined in the Count XI;

G.      Award pre- and post- judgment interest at the legal rate; and

H.      Grant such other and further relief as the Court deems just and proper.

DATED: May 5, 2020

RESPECTFULLY SUBMITTED,

Edward N. Griffin, Esq.
CPF No. 0412140304
ADELPHI LAW
2306 Wineberry Terrace
Baltimore, MD 21209
Tel. 202.361,5246
Fax. 888.367.0383
griffin@adelphilaw.com


*Attorney for Plaintiff*

/s/Edward Griffin/s/
Edward N. Griffin