**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

STUDENT "A", *et al.*                              *

                            *        Civil Action No. CCB-20-1434

      v.                                        *

                            *

LAWRENCE HOGAN, *et al.*                    *

                        ************

**MEMORANDUM**

In this matter, plaintiffs Student "A", Matthew Zaleskas, and Evan Zaleskas bring claims for breach of contract and under the Takings Clause of the United States Constitution and Article 24 of Maryland's Declaration of Rights against Governor of Maryland Lawrence Hogan, in his official capacity, and the Board of Regents of the University System of Maryland ("the Board"). The plaintiffs seek on behalf of themselves and other putative class members the return of certain tuition and other fees paid to the University System of Maryland ("USM") for the Spring 2020 semester after the defendants' March 12, 2020, decision, necessitated by the COVID-19 pandemic, to close all Maryland public colleges and universities and convert the remainder of the semester from in-person to remote instruction.

Before the court is the defendants' motion to dismiss (ECF 17). The matter has been fully briefed, and no oral argument is necessary. *See* Local Rule 105.6 (D. Md. 2018). For the reasons stated herein, the motion will be granted.

**FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff Student A is a full-time student at the University of Maryland Baltimore County ("UMBC") and plaintiff Evan Zaleskas is a full-time student at Towson University; both attended their respective institutions in the Spring 2020 semester. (ECF 12, Am. Compl. ¶¶ 3, 5, 27, 30). Plaintiff Matthew Zaleskas is the parent of Evan Zaleskas and has paid for part of Evan's education at Towson. (*Id.* ¶ 4). Towson and UMBC are part of the USM, which is managed by the Board. (*Id.* ¶¶ 6, 14).

Though UMBC and Towson offered online education prior to the USM's COVID-19 closure, Evan

and Student A claim they sought in-person attendance at a USM institution because of the perceived

benefits of on-campus learning, including

> *inter alia*, access to interaction with faculty of various departments; [access to other] students. .
> .; access to facilities such as computer labs, study areas, libraries, laboratories, exercise
> facilities and the like; student governance and student unions; intramural events, clubs, formal
> and informal groups; offerings of arts, music, and cultural programs; and in general social
> development and personal and professional networking opportunities.

(*Id.* ¶ 24). The websites of both Towson and UMBC include positive descriptions of their physical

campuses and facilities and activities available to students who choose in-person education or choose

to live on campus, and encourage students to use campus facilities, attend on-campus activities and

events, and interact with professors and other students on campus. (*Id.* ¶¶ 17–23).

Using installment payments and financial aid, the plaintiffs paid tuition, housing, meal plan,

and other mandatory fees to attend their respective institutions in the Spring 2020 semester. Student A

paid $12,322 in tuition, costs, and fees for the semester, and the Zaleskases paid $11,572.[1] (*Id.* ¶¶ 28,

31).

On March 5, 2020, Governor Hogan declared a state of emergency and catastrophic health

emergency to control and prevent the spread of COVID-19 in Maryland. A week later, on March 12,

2020, finding that the emergency still existed, Governor Hogan issued an executive order

implementing Elevated Level II of the Pandemic Flu and Other Infectious Diseases Attendance and

Leave Policy for certain Executive Branch employees of the State of Maryland, effective March 13,

2020. Executive Order of Governor Lawrence J. Hogan, Jr. (issued March 12, 2020),

https://governor.maryland.gov/wp-content/uploads/2020/03/Elevated-Level-II.pdf. On the same day,

the defendants ordered USM classes suspended until further notice and the plaintiffs were informed

---

[1] The plaintiffs claim that the Zaleskases also paid $12,322 for Evan's Spring 2020 semester education
appears to be a drafting error, as the individual costs of his attendance (tuition, $3,481; housing,
$3,723; meal plan, $2,700; mandatory fees, $1,668), add up to $11,572.

that USM campuses would be closing. (ECF 12, Amended Compl. ¶ 33). On March 13, USM issued a

statement that their institutions were "making plans to transition students to remote and online learning

following spring break." University System of Maryland Statement on Room and Board Policies for

Residential Students Moving to Remote and Online Learning (March 13, 2020),

https://www.usmd.edu/newsroom/USM_Statement_Room_Board_Policies_COVID-19.pdf. Classes

did resume, virtually, after USM's already scheduled spring break, on or about March 23, 2020. (ECF

12, Amended Compl. ¶ 34). For the remainder of the semester, the plaintiffs did not have access to

USM's physical facilities or campuses. (*Id.* ¶ 37).

In April 2020, the amounts Student A had paid for their housing and meal plan were partially

refunded—they were credited $2,184.72 and $1,291.42, respectively. (*Id.* ¶ 38). Student A also

received two "E-Refunds" in the amounts of $810.15 and $787.78, the purposes of which were

unspecified. (*Id.* ¶ 42). The Zaleskases received a credit of $3,951.49 on Evan's student account in

April 2020, a partial refund for mandatory fees, housing, and meal plans. (*Id.* ¶ 39). The Zaleskases

apparently did not receive an additional "E-Refund."

The plaintiffs initially brought class claims against Governor Hogan and the Board in Maryland

State court alleging that the USM closure and transition to remote instruction constituted a breach of

express or implied contract, unjust enrichment, a violation of the Takings Clause under the Fifth

Amendment of the United States Constitution and Art. III, § 40 of the Maryland Constitution. (*See*

ECF 3). The defendants removed the case to this court and filed a motion to dismiss. Thereafter, the

plaintiffs filed an amended complaint (ECF 12) which removed their claims for breach of implied

contract, unjust enrichment, and violations of Art. III, § 40 of the Maryland Constitution, and added

claims for a violation of Art. 24 of the Maryland Declaration of Rights. (*See* ECF 12, Amended

Compl. ¶¶ 56–153). The defendants again moved to dismiss the plaintiffs' claims. (ECF 17). The court

addresses this second motion to dismiss.[2]

The plaintiffs seek to represent three potential classes of plaintiffs: (1) a "Tuition Class"

comprised of all persons who paid tuition to attend a USM institution on-campus for the Spring 2020

semester, but whose education was converted to remote instruction; (2) a "Mandatory Fees Class"

comprised of all persons who paid USM mandatory fees for the Spring 2020 semester and who "have

not received full refunds for the loss in value of those Fees;" and (3) a "Resident Class" comprised of

all persons who paid for housing and or meal plans for the Spring 2020 semester and who have not

received "full refunds for what housing and meal plans they were not able to use." (ECF 12 ¶ 47).

They seek to recover damages, in the form of a refund of at least half of tuition costs paid for the

second half of the Spring 2020 semester on a pro rata basis, and a full refund of housing, meal plan,

and mandatory fees for the second half of the semester on a pro-rata basis; and declaratory and

injunctive relief. (*Id.* ¶¶ 61, 67, 73, 84, 95, 105, 106–115, 126, 140).

## STANDARD OF REVIEW

To survive a motion to dismiss, the factual allegations of a complaint "must be enough to raise

a right to relief above the speculative level on the assumption that all the allegations in the complaint

are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations

omitted). "To satisfy this standard, a plaintiff need not 'forecast' evidence sufficient to prove the

elements of the claim. However, the complaint must allege sufficient facts to establish those elements."

*Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted). "Thus, while a plaintiff

does not need to demonstrate in a complaint that the right to relief is 'probable,' the complaint must

advance the plaintiff's claim 'across the line from conceivable to plausible.'" *Id.* (quoting *Twombly*,

---

[2] Because the first motion to dismiss (ECF 8) addresses claims no longer at issue or claims also
addressed by the second motion to dismiss, it will be denied as moot.

550 U.S. at 570). Additionally, although courts "must view the facts alleged in the light most favorable to the plaintiff," they "will not accept 'legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments'" in deciding whether a case should survive a motion to dismiss. *U.S. ex rel. Nathan v. Takeda Pharm. North Am., Inc.*, 707 F.3d 451, 455 (4th Cir. 2013) (quoting *Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012)).

## DISCUSSION

### I.      Breach of Contract and Sovereign Immunity

The plaintiffs allege that they and the defendants had an express contract that called for the plaintiffs to fully pay tuition, housing, meal plan, and mandatory fees in exchange for the in-person provision of education, housing, food, and other services, and that the defendants' conversion of part of the Spring 2020 semester to remote instruction and failure to refund "the difference in value between the in-person" provision of those services and the online instruction received constituted a breach of that contract. (ECF 12, Am. Compl. ¶¶ 57, 59, 63, 65, 69, 71). The parties agree that the defendants are an officer and a unit of state government entitled to sovereign immunity on these breach of contract claims unless waived by the Maryland General Assembly. (*See* ECF 17-1 at 9; ECF 12, Am. Compl. ¶ 10; ECF 18 at 3).

"[W]hen a governmental agency or actor can, and does, avail itself of the doctrine of sovereign immunity, no contract or tort suit can be maintained thereafter against it unless the General Assembly has specifically waived the doctrine." *Stern v. Bd. of Regents, Univ. Sys. of Md.*, 380 Md. 691, 701 (2004). The plaintiffs allege in their Amended Complaint that the defendants have waived sovereign immunity under Maryland Code Ann., State Gov't § 12-201 *et seq.* (ECF 12 ¶ 10). They appear to have raised an additional basis for waiver in their response to the motion to dismiss, arguing that the State waives sovereign immunity where a plaintiff makes a claim for tuition overpayment based on a

contract or a mis-application of a refund policy. (ECF 18 at 9). The defendants argue, and the court

agrees, that the plaintiffs have failed to adequately plead that the State has waived immunity.

Maryland Ann. Code, State Gov't § 12-201(a) provides:

> Except as otherwise expressly provided by a law of the State, the State, its officers, and
> its units may not raise the defense of sovereign immunity in a contract action, in a court
> of the State, based on a written contract that an official or employee executed for the
> State or 1 of its units while the official or employee was acting within the scope of the
> authority of the official or employee.

In *Stern v. Bd. of Regents*, the Maryland Court of Appeals stated that this provision was to be

construed narrowly "in order to avoid weakening the doctrine of sovereign immunity by judicial fiat."

380 Md. at 719–20; *see also ARA Health Servs. v. Dep't of Public Safety & Corr. Servs.*, 344 Md. 85,

91–95 (1996) (holding that the state had not waived immunity under § 12-201(a) in a contract action

based on the modification of a written contract where the Department of Public Safety and Corrections

acted outside its express statutory and regulatory authority to modify the contract and thus was not

acting in the scope of its authority for purposes of §12-201(a)). *Stern* concerned a challenge by USM

students to a mid-year tuition increase imposed by the Board in response to budget cuts. Students

claimed that their tuition bills represented a written contract with the Board sufficient to waive

sovereign immunity under § 12-201(a), but the court disagreed, holding that the statute requires a

plaintiff to present "a written contract signed by a person expressly authorized to execute the contract

for the University System" in order for immunity to be waived. *Id*. at 722. Because the tuition did not

contain a signature of a person so authorized, the Board had not waived immunity. *Id*. at 722–23.[3]

Here, the plaintiffs allege that they and the defendants "had an express contract that called for

the Plaintiffs to fully pay" in-person tuition, mandatory fees, and resident fees in exchange for the

defendants' provision of in-person and in-classroom education, and housing and meal plans and that

the agreement "was executed by an official with authority to bind Defendants." (ECF 12, Am. Compl.

---

[3] The court also declined to hold that the tuition bills were a written contract under § 12-201(a). *Id.*

¶¶ 57–58, 63–64, 69–70). But none of the facts alleged in the complaint plausibly point to the existence of a written contract signed as contemplated by § 12-201(a). "Maryland law requires that a plaintiff alleging a breach of contract must of necessity allege with certainty and definiteness *facts* showing a contractual obligation owed by the defendant to the plaintiff and a breach of that obligation by defendant." *Polek v. J.P. Morgan Chase Bank, N.A.*, 424 Md. 333, 362 (2012) (internal quotation marks and citation omitted) (emphasis in original). The plaintiffs' allegations that USM schools "advertise" online the in-person interactions, benefits, and activities available to their students (*id.* ¶¶ 17–23) cannot be construed as a contract that satisfies the waiver language in § 12-201(a). In *Stern*, a written tuition bill failed to satisfy those requirements, *see Stern*, 380 Md. at 722–23, and other courts have found that even written USM policies and procedures fail to create a written contract under the statute, *see, e.g.*, *Doe v. Bd. of Trustees of St. Mary's Coll. of Md.*, No. CBD-19-1760, 2019 WL 6215543, at *1 (D. Md. Nov. 20, 2019); *Keerikkattil v. Hrabowski*, No. WMN-13-2016, 2013 WL 5368744, at *8 (D. Md. Sept. 23, 2013).[4][5]

The plaintiffs' attempt to liken this case to *Frankel v. Bd. of Regents*, 361 Md. 298 (2000) fares no better. *Frankel* predates *Stern*, and held that a University of Maryland student's suit challenging the determination of his residency status for tuition purposes and to recover tuition overcharges was not barred by sovereign immunity where the Board had, under its legislative authority to set tuition and fees, Md. Code Ann., Educ. § 12-109(e)(7), "adopted a Policy and regulations entitling a student to a

---

[4] Unpublished opinions are cited for the persuasiveness of their reasoning and not for any precedential value.

[5] The plaintiffs also ask the court to "take judicial notice" of cases in which a written contract existed between a USM school and a plaintiff, citing *Towson Univ. v. Conte*, 384 Md. 68 (2004), in support of their argument that a written contract must exist in this case. This argument is meritless. In *Conte* a former Towson University professor brought a breach of contract action, alleging wrongful termination under his written employment agreement with the University. *See id.* at 74. The mere fact that a case exists in which the USM entered into a written employment contract, and in which the court did not address § 12-201(a), cannot support a plausible inference that the defendants here entered into a written and signed contract with the plaintiffs to provide in-person education and services.

7

credit or refund of tuition upon re-classification from out-of-state to in-state status." *Frankel*, 361 Md.

at 309. The plaintiff's allegations that the defendants credited their accounts with several refunds (ECF

12, Am. Compl. ¶¶ 39–44) constitute the only references to any refund in the Amended Complaint, yet

the plaintiffs claim in their opposition that "it is obvious that some sort of refund policy was created by

Defendant" (ECF 18, Opp'n at 9). Even the most generous reading of the plaintiffs' contentions cannot

support an inference that the amounts credited to the plaintiffs' accounts represent the adoption of a

regulation or policy specifically *entitling* a student to a tuition or fee refund as in *Frankel*, as opposed

to a voluntary remittance of some part of the Spring 2020 tuition and fees the plaintiffs paid in

response to the USM's unfortunate emergency closure in March.

At bottom, the plaintiffs ask the court to trust that discovery will reveal the "exact terms" of a

refund policy and the existence of a written contract that obligates the defendants to provide in-person

housing, meals, and education in exchange for a specified fee. (ECF 18, Opp'n at 5, 9, 11 n.3). Such

speculative assertions are insufficient under Rule 8 "to advance the plaintiff's claim 'across the line

from conceivable to plausible.'" *Walters v. McMahen*, 684 F.3d at 439 (quoting *Twombly*, 550 U.S. at

570); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009) (noting that Rule 8 "does not unlock the

doors of discovery for a plaintiff armed with nothing more than conclusions").[6]  Accordingly, the

plaintiffs' breach of contract claims will be dismissed.

---

[6] There is no merit to the plaintiffs' additional argument that the court should allow the claims to
proceed in order for plaintiffs to "hypothetically" discover contractual agreements between the parties
that would support a finding that the defendants misrepresented the nature of their obligations as to the
return of tuition or fees and thus allow plaintiffs to assert equitable estoppel against the defendants'
claim of sovereign immunity. (ECF 18, Opp'n at 10). "Ordinarily, the doctrine of estoppel does not
apply against the State," *ARA Health Servs., Inc. v. Dep't of Public Safety & Corr. Servs.*, 344 Md. 85,
96 (1996), and there are no facts in the Amended Complaint that suggest estoppel would be warranted
here.

## II.      Maryland Declaration of Rights

Article 24 of the Maryland Declaration of Rights is the Maryland counterpart of the Due

Process clauses found in the Fifth and Fourteenth Amendments to the United States Constitution and

provides "[t]hat no man ought to be taken or imprisoned or disseized of his freehold, liberties or

privileges, or outlawed, or exiled, or, in any manner, destroyed, or deprived of his life, liberty or

property, but by the judgment of his peers, or by the Law of the land." *Allmond v. Dep't of Health &*

*Mental Hygiene*, 448 Md. 592, 609 (2016). Article 24 has been interpreted to preclude the enactment

of legislation to retroactively abolish or take away a vested property right. *See Dua v. Comcast Cable*

*of Md., Inc.*, 370 Md. 604, 625–30 (2002).

The plaintiffs argue, citing *Dua*, that the defendants' arbitrary "structuring or application" of a

refund policy in response to the COVID-19 closure of USM facilities would amount to a retroactive

deprivation of their contractual rights to in-person education and associated on-campus services

because the policy allows the defendants to retain money students already paid. (ECF 18, Opp'n at 15–

16). *Dua* concerned challenges to Maryland legislation that retroactively abrogated either common law

or statutory rights to certain sums of money or causes of actions. *See* 370 Md. at 642. As explained

above, the plaintiffs have not adequately pled any express contractual or statutory right to a refund, nor

have they proffered facts showing that the defendants authorized any refund policy or regulation for

Spring 2020 tuition and fees akin to legislation. Simply put, they have alleged no retroactive legislative

action that amounts to a deprivation of rights actionable under Article 24. Accordingly, the plaintiffs'

claim under the Maryland Declaration of Rights will be dismissed.

## III.     Takings Clause

The Takings Clause of the Fifth Amendment of the United States Constitution prohibits the

government, including state governments through the Fourteenth Amendment, from taking private

property for public use without just compensation. To make out a successful Takings Clause claim, the

plaintiffs must establish that they possess a constitutionally protected property interest before the court

will examine whether governmental regulation of that property constitutes a taking. *See Washlefske v.*

*Winston*, 234 F.3d 179, 183 (4th Cir. 2000). A cognizable property interest under the Fifth Amendment

is more than "an abstract need," "desire," or "unilateral expectation;" it is a "legitimate claim of

entitlement" that stems "from an independent source such as state law." *Horne v. Mayor & City*

*Council of Baltimore*, 349 Fed. App'x 835, 838 (4th Cir. 2009) (quoting *Bd. of Regents of State*

*Colleges v. Roth*, 408 U.S. 564, 577 (1972)).

The plaintiffs claim that the alleged breach of their contractual rights deprived them of

constitutionally protected property rights. A contract may create a constitutionally protected property

right if the contract "creates an entitlement" and if the right is "a type accorded protection under the

due process clause." *Uzoukwu v. Prince George's Comm. College Bd. of Trustees*, Civ. Action No.

DKC 12-3228, 2013 WL 4442289, *8 (D. Md. Aug. 15, 2013) (quoting *Blackwell v. Mayor &*

*Comm'rs of Delmar*, 841 F. Supp. 151, 155–56 (D. Md. 1993)). The plaintiffs' conclusory and

speculative allegations that a contract for in-person instruction and services existed between them and

the defendants are insufficient to show that an agreement created a property right in on-campus and in-

person services, protected by due process. Their alternative argument, again citing *Frankel*, is that they

have a protected interest in the tuition payments and fees they paid into their USM accounts, as they

could have claims to tuition overcharges. But *Frankel* recognizes an entitlement to a refund from a

state government agency only where a person has paid "more in taxes, fees, or charges than the

government is entitled to" and "the law specifically authorizes a refund, although no particular

statutory remedy is provided[.]" 361 Md. at 309 (citing cases). As previously explained, the plaintiffs

point to no law or policy authorizing a refund of the tuition and fees they paid, and they point to no

other authority supporting their contention that any fee paid to the government for a service may form

the basis of a takings claim if a citizen later believes they have not received the service they paid for.

Even if the plaintiffs had plausibly alleged a constitutionally protected interest in the monies they paid to the defendants, their claim would still fail as a matter of law as the defendants' retention of those monies cannot constitute a taking. The Supreme Court has recognized three categories of governmental regulatory action which may constitute a *per se* taking: (1) regulations that involve the government taking physical possession of real or personal property "for its own use;" (2) regulations that deny "all economically beneficial or productive use of land," and (3) regulations that require a "permanent physical occupation of real property," *Maryland Shall Issue v. Hogan*, 353 F. Supp. 3d 400, 412–13 (D. Md. 2018) (citations omitted),[7] none of which are implicated by the plaintiffs' claims. Nor can the plaintiffs successfully show that the defendants' actions constituted a regulatory taking under the fact-specific *Penn Central* test, which requires the court to consider the economic impact of a regulation, the regulation's interference with the plaintiff's investment-backed expectation, and the character of the government action. *Penn. Cent. Transp. Co. v. City of New York*, 438 U.S. 104, 124 (1978); *see also Pulte Home Corp. v. Montgomery Cty.*, 909 F.3d 685, 696 (4th Cir. 2018). The economic impact of the USM transition to remote learning is unclear—the plaintiffs have already been given refunds of approximately half of what they originally paid in housing, meal plan, and other mandatory fees after the defendants' closure left them without access to those services for about half of the Spring 2020 semester, and while the plaintiffs allege that the remote instruction they received is a diminished form of education compared to in-person instruction, "mere diminution in the value of property, however serious, is insufficient to demonstrate a taking." *Pulte*, 909 F.3d at 696 (quoting *Concrete Pipe & Prods. of Cal., Inc. v. Constr, Laborers Trust for S. Cal.*, 508 U.S. 602, 645 (1993)). Against these uncertain impacts the court weighs the defendants' justification for the emergency

---

[7] The first and third categories, both of which concern the government's physical possession of property, may be considered together. *Cf. Blackburn v. Dare Cty.*, --- F. Supp. 3d ----, No. 2:20-CV-27-FL, 2020 WL 5535530, *5 (E.D.N.C. Sept. 15, 2020) ("For the same reasons that plaintiffs fail to allege a physical taking by defendant County, they also fail to allege a permanent physical occupation of their property sanctioned by defendant County.") (appeal filed).

closure—the risk of the spread of COVID-19 to students if they were permitted to continue to gather in large groups on campus for classes and activities or to live in group housing together. The plaintiffs themselves acknowledge that the defendants "acted in the best interest of the safety of Plaintiffs and the Class" by closing USM facilities and transitioning to remote education in response to a global pandemic that, nearly ten months later, has not abated. (*See* ECF 12, Amended Compl. ¶ 12). "Courts have long recognized that regulations that protect public health or prevent the spread of disease are not of such a character as to work a taking." *Blackburn v. Dare Cty.*, --- F. Supp. 3d ----, No. 2:20-CV-27-FL, 2020 WL 5535530, *6 (E.D.N.C. Sept. 15, 2020) (citing cases and concluding that travel restriction precluding non-resident property owners from entering county during state of emergency posed by COVID-19 did not effect a regulatory taking) (appeal filed) *see also Maryland Shall Issue*, 353 F. Supp. 3d at 408–12. Accordingly, the plaintiffs' takings claims will be dismissed.

## CONCLUSION

The COVID-19 pandemic has forced many government agencies to make difficult decisions in order to protect the health and safety of the people they serve, resulting in significant and unexpected changes to the manner in which some, including the plaintiffs and the proposed class, receive those services. The court does not doubt that the transition to remote learning for students at USM facilities has been less than ideal and is sympathetic to the plaintiffs' view that their tuition should be partially refunded after the manner of their education was so drastically altered. But they have shown no legal entitlement to refunds greater than those the state has voluntarily provided. Accordingly, the defendants' motion to dismiss will be granted. A separate order follows.


 1/13/21                                                            /S/                              
Date                                                      Catherine C. Blake
                                                          United States District Judge